Good morning and welcome to Saipan. I'm Joe Hill for the worker Mr. Bonifacio Sacana. I'd like to direct the Honorable Court's attention to what I perceive as being the primary issue, an issue that we should at least address first before we address other issues, and that is whether Section 1981 applies to aliens in the Gulf of Iran. The government argues that, first, that 1981 does not apply to alien discrimination at all. Two, they argue that 1981 does not apply in the Sea of Nevada. And I'd first like to, of course, address that first. Let me see if I understand. The district court never ruled on this issue, did it? That's correct. So the first issue is whether the district court was correct in holding that the pleadings themselves and the record before the district court, you had not raised the issue. So before we decide whether the, assuming the district court ruled against you, which we can't, maybe we ought to find out whether or not we need to treat it at all, which means was the district court in error in deciding that you had failed to raise the issue and therefore did not take up 1981? That's a fair assessment, and I will take your cue on that and address that point. Well, rarely do we go ahead and decide things that aren't decided. We usually send them back that this judge was wrong. So I think maybe that's maybe a primary issue, if you don't mind. Thank you, Your Honor. The district court erred in concluding that sufficient factual basis were not alleged and set forth in our settlement agreement paragraph 5 NRN complaint, paragraph 52 of the complaint. I'm missing something. I read the district court opinion. Ordinarily, we see if there's something in the complaint, but the district court continued to talk about the settlement agreement. Was the settlement agreement like a pretrial order which took the place of the complaint or was the settlement agreement separate from the pleadings of the complaint? It was separate from, I believe, in the sense that it was designed to resolve. I'm sorry, it was separate from. And I suppose, therefore, if there is a violation of the settlement agreement in your bringing this action, there would be a separate affirmative defense for your opposition to raise. So could you tell me, then, why did the district court err when he looked, the district judge looked at your complaint and concluded that there was an insufficient allegation of a 1981? What is there? Where did he make a mistake? Where in your complaint do you raise enough to get the 1981 issued before the court? Paragraph 52 of the first clause of action. Sixty-two? Five-two. Fifty-two? Fifty-two. Okay. And in 52, you talk about a subsidy of due process and equal protection. Are those words enough for 1981? Those words alone are perhaps not enough. But we say more than that there. We also talk about the same as citizens, which is, again, another kind of a buzzword for 1981. He's not a citizen. As a citizen to pursue his rights, he admits there, of course, that he is a nonresident but just a worker. As long as he is lawfully admitted. As long as he is lawfully admitted. So it takes it out of those cases where I think it made some distinction based on the fact that A is where I was disappointed. Well, don't we have to focus our attention on cases of workers who are conditionally admitted? We have a lot of them in the San Joaquin Valley, for instance, who are conditionally admitted to work in agricultural work for a certain time. Then their permit expires or they are sent home. Why isn't this similar? This is a conditional admission, is it not? It is a admission with a condition of specific employment. He's here to work for a sponsoring employer, is he? That's correct. And that's the condition under which he is admitted. That's correct. So he's not the same as a free-range citizen of CNMI who is born here and can stay as long as he or she likes? Well, I think that that gets into the application of the Nonresident Work Act, how it's applied here in the CNMI. As you recall, the district court judge did find and clarified for everyone from the beginning that the Nonresident Workers Act, on its face, is discriminatory. That's his finding. And then I think everything else would have to fall into line of the constitutional analysis. After he made that finding, then we have to use the… Help me. What are the classes that we're talking about if we're talking about equal protection? Our own. Alienage. Versus what? White citizens. Versus white. Yes. Well, that's what 1981 says. Yes. But in this case, you're talking about aliens versus citizens of the Northern Marianas, or are you talking about nonresident aliens versus resident aliens? What are the classes? Let me try to maybe clarify some of that. The Nonresident Workers Act is kind of a misnomer to begin with. It says nonresident worker, and as you will see, the district court did address that issue in another separate case that we pointed out saying that there were two classes of persons here, residents and aliens. And as far as aliens go, the aliens that are here under contract are residents. And the misnomer is that they call them classified as nonresidents, while they are in fact not a particular contingent. They're not residents in a sense, but that's the way they are. Well, they're living here. They're living here, and they were invited here, and they're living here. Under that invitation, they were invited here, and they're living here. But they're not permitted while they're living here to do anything, to work at anything that they want. That's the problem. Well, the problem is that they're not permitted to do a number of things, including work. Other things that they're not permitted to do, as was pointed out, is that they can't be a member of a corporation. They can't be on the board of directors of a corporation as an aside from their job. They can't have a partnership interest in shares in a corporation. These are all things that are reflective of about 100 years ago in California and the Chinese cases. It seems though we're kind of repeating ourselves back in the Pacific. So there are a number of rights that they are prescribed under the Non-Resident Work Act, things to do. You don't see this in the United States, for example. I think the main problem here is that we have here superimposed on the certification to enter and work a government-imposed form contract that they're required that either you take it or you leave it. So everybody, if I want to hire a worker, the government gives me a contract that has all the listed terms on there, except how much I'm going to pay him an hour. And for the rest of it, basically, you're bound by that. Did you raise in the district court any question of a contract of adhesion or illegality of the contract? What we did raise was that we thought that it was inappropriate for the government to be involved in the contractual relationship rights granted under 1981 for citizens to negotiate contracts. But the government does that in the United States. Workers' programs is a statutory determination in which the workers' contracts are governed, and they're restricted by non-residents. I didn't follow that. They're restricted by non-residents. People who come under the Workers' Visitors Act in the United States don't get the same rights as other citizens. Yeah, but the government doesn't hand you a prescribed contract. I don't think they tell you to sign it. So your point is that the government is too much involved? Well, to the extent that they involve themselves in contractual matters, they're too much involved. Is that an equal protection problem? What is the provision of the Constitution? Are we talking about equal protection? Are you in 1981 or equal protection? I'm sorry? Where are you now, in equal protection or 1981? I'm sorry, you got me. I wasn't following. The contract that is imposing a contract. Yes, it comes under equal protection through the 14th Amendment, of course, and then also through Section 1981. Well, who comes in if he doesn't have his contract imposed? Who comes in? Well, I'm not sure if I followed, but let me respond this way. The Non-Resident Workers Act is exactly what it says. It has to do with workers, aliens who have been admitted as workers. It is not the local immigration law. Our local immigration law is under the Entry and Deportation Act, which is a separate act, which stands alone, which governs all entry and exit of all aliens. That's under the Entry and Deportation Act. This Non-Resident Workers Act is basically a piece of legislation of convenience for the government here locally that they have decided to interpret and apply what they perceive as their immigration powers in this manner, and so they've gotten this Non-Resident Workers Act. Now, the other aliens enter, whether they're coming here as entertainers or teachers or whatever, not by the Non-Resident Workers Act, but their approval is subject to the Entry and Deportation Act, which is our immigration act. I hate to circle back to an earlier question, but I'm still not clear on the trial judge in this case indicated that he was granting summary judgment, or he talked about summary judgment, but it sounds more like a dismissal under Rule 12b-6 of judgment on the plea. Now, if it's in 12b-6, no testimony was taken, no record was made. We don't know the facts of the individual case, really, but if it's a summary judgment, there are affidavits and documents and so forth for the court to study. Now, which route did you take? I'll ask the other side to help you on this, too. Did the court grant a summary judgment, or did it dismiss under Rule 12b-6? Well, the court, of course, stated that it was treating it as a motion for summary judgment, even though we had filed it under a different heading, but he treated it as a motion for summary judgment, so I think our analysis has to necessarily follow what he said he was doing. Well, you brought a motion for summary judgment. The government didn't. The judge decided that you were wrong and the government was right, so he assumed or assumed a counter-summary judgment and granted it to the government, and the issue comes up, as Judge Goodwin points out, what was he doing this on the basis there's nothing in the complaint as a matter of law? That's an issue that's a little troubling to us as to the basis upon which. And then the other issue that similarly, even though you get by it on the face, there's no violation of legal protection as soon as you come to that position. I thought there was an as-applied challenge because you had so many facts in there in your motion for summary judgment. Did you abandon your as-applied challenge? No, Your Honor, we did not. And the district court, I think, went through its analysis of what standard they felt was appropriate. I read the district court's opinion. I don't for the life of me understand what happened to as-applied unless you waived it along the way because he doesn't get to it. Or did you ever raise it? Well, I think that we discussed that. I don't know what you specifically said that used the buzzwords for it. I don't know what buzzwords are. You'll have to help me with that. Here they either have as-applied or don't. Somebody raises it or they don't. Somebody abandons it or they don't. Yes. I think that we addressed that in our arguments to the court, that the Nonresident Workers Act could not even be enforced by the U.S. government opinion here. Let me ask you a question because we're running out of time. But I want to ask you a question about the scrutiny of the statute under which the workers come in on a conditional entry into the CNMI on a condition that a sponsoring employer is going to give them a certain job. That's the condition under which they come in. You say that law, the local law, violates certain federal constitutional provisions. And one of them, you claim, is equal protection. Another one is, well, you rely on Statute 1981, which incorporates constitutional rights. But the question I'm trying to get an answer to, I guess, is the level of scrutiny that a court should apply to a statute which on its face, as the judge said in this case, is discriminatory. And there are statutes all over the United States. And under the United States flag in various territories, there are very discriminatory statutes that discriminate against all kinds of classifications of people. Each of those can be tested in court as to whether it violates a constitutional provision by some level of judicial scrutiny. Now, is this an ordinary, reasonable basis statute, or is it a strict scrutiny, an invidious discrimination statute that gets strict scrutiny? And how do you break down what happened in this case as to what kind of scrutiny we should give it? I think the guide here would be what the Supreme Court did in Flores v. Del Perro, the Puerto Rico case, where the court basically faced with a statute which prohibited Asians from pursuing jobs as engineers. They said they didn't want to ever confront it with whether or not it violated the 14th Amendment or the 5th Amendment. They said they didn't have to reach that because it was so egregious that it would not pass muster under either the 14th Amendment or the 5th Amendment. And when you have a finding here, as the court did, that it's on its face, it's discriminatory. Was that a Puerto Rico statute? Yes. Does Puerto Rico have the right to control its immigration and naturalization? No. A little bit different than what we have here. Now, the district court decided that he would use a rational basis. I take it you wanted him to use strict scrutiny. Strict scrutiny because we feel that under whichever analysis and equation, that's what it would be. The scene of mine, in any event, is not the federal government, no matter how we cut it. There is no delegation of immigration authority. And as we point out, at best, it's mere discretionary abstention by the United States in not applying the full body of the Immigration and Nationality Act. We do, as you know, apply certain provisions of the Immigration and Nationality Act. In any event, they've just preserved on the others. I think the problem here, as I see it, is for the scene of mine, they argue that they in some way have plenary powers when it comes to immigration. Well, in the normal analysis of what constitutes plenary power, they are not the sovereign to begin with under the covenant that says that they're not the sovereign.  So normally we start out speaking about plenary powers coming from a entity that's a sovereign. You don't have any – I take it you don't have an argument with the compact that was entered into that the United States can delegate certain powers to the Commonwealth of Marianas. You don't object to that. I'm not sure what the compact is. The compact between the United States and the Commonwealth of Marianas, which granted to them Commonwealth status and a close relationship with the United States, but under certain circumstances. You don't take the position that the United States can't delegate certain of their powers to the Commonwealth under the compact. The – under the covenant. Covenant. Oh, yes. It's a compact when you get to Palau, and it's a covenant when you're here. Okay. Excuse me. Under the covenant, the covenant outlines the applicability of U.S. laws in the Northern Marianas, and it provides that the 14th Amendment, along with those laws that are applicable to Guam at the time, which includes 1981, are applicable to the Commonwealth. And under section, I think it's 102, it provides that those make up the supreme law of the Northern Marianas Islands. Okay. I think you have used your time. I just want to ask you one question. If you were this court and you were writing an order, what would you – what do you want? We feel that this – that the district court there, this matter should be sent back to the district court for them to either make sufficient findings or look at the record. Okay. But what – then what do you want the district court to do? Do you want the district court to order that your client can work at any job that he wants? Is that – Well, we want them to order that the Non-Resident Workers Act, being discriminatory on its face, cannot be enforced. Every immigration statute is discriminatory. That is, it doesn't apply to anybody except aliens who are trying to get in. Well, that's – I guess that's, in a sense, true. But we've been talking about the – to the extent that the Non-Resident Workers Act attempts to govern contractual relationships between parties, we're saying that you have to compare that and weigh it with what 1981 provides to aliens and other persons. Assuming that an alien is discovered under 1981. So are you essentially arguing that this is almost like slavery? These are indentures of employment because they are – you have to get approval, not only to get into a contract, but you've got to get approval to basically terminate it if you intend to stay on. Okay. Thank you. We'll give you a minute to rebut after the – Thank you. Governor, how are you? Good morning. My name is Jay Livingstone. I'm the Senior High Attorney General's Office. I appear on behalf of Secretary Tormey, and I also welcome you to the Senior High. Thank you for visiting. I hope you enjoy your stay. I prepared to talk primarily about the Equal Protection Challenge, but after hearing your questions, I wanted to spend a minute to just explain the procedure of what happens with the district. What happened with the district was we were nearing trial, and there were a series – there was a pretrial conference that ended up being a settlement conference. And then there was actually a settlement. And the reason – what that resulted in was a settlement which was entered, filed to the court as part of the stipulated injunction, entered into order of the court. And that's at tab 15, the ex-service record. And that dismissed the Commonwealth, paid some money, agreed to redraft its regulations, and also to allow one – this is going to represent one paragraph of this complaint. So the settlement agreement narrowed the complaint down to one facial challenge. That's Paragraph 52 of the complaint. Yeah. We actually put the specific language, but the language in the settlement was just definitely Paragraph 52. Do I understand correctly, then, there's a pretrial order that says the complaint that's going to go to trial is Paragraph 52 of the complaint? It wasn't a pretrial order. It was a settlement that was entered as a stipulated judgment of the purpose. And the only thing that would proceed to the district court was the district court would decide a legal issue, a facial challenge to the non-residual offense. You know, that's good language, but it doesn't help us any because we have to have some sort of a record. What was the complaint done away with completely? Yes, there's a release of all the complaints. And the only exception to that release is the language that is put specifically in the settlement. The language in what? Counsel says it's Paragraph 52, and that's what he's going on. We didn't refer to Paragraph 52. Instead, what we did was we took the actual language of Paragraph 52. Oh, OK. So Paragraph 52 is in what was going. Yes, but it's actually the words. We didn't say Paragraph 52 remains. Instead, what we said was everything is dismissed except this does not make proceedings. These words in there directly from 52. Yes. What happened to the as applied challenge? That's what is on appeal. What Mr. Heldman files or Mr. Scott files a motion of judgment on that particular issue. He also included a lot of statement. We oppose that. As a matter of law, yes, I thought he moved for summary judgment. He also moved. He never moved. Then the district court said, I'm going to consider this as if it's a subject. But it was the only thing remaining is a legal challenge. Now, so the issue is and he took the position. The district judge took the position that there's nothing before me by way of what I thought were pleadings. But now we find 52 has been excerpted, put it in. And it's essentially the complaint that there's nothing in there about 1981. Therefore, I'm not getting to 1981. And then the opposition says, but wait a minute. There is enough in here. We don't have very strict pleading rules in the federal court. You can plead almost anything. Just the plain simple. As long as you give some notice. As a matter of fact, there was a Supreme Court case that came up this last term. Unanimous authored by Justice Thomas. It looks like that all of the discrimination cases are going to move to McDonnell Douglas, which means getting into court for a plaintiff is going to be relatively easy for these issues. Now, why? Why isn't there enough? My first question is, why isn't there enough here to get under 1981 considering our liberal pleading rules? And if not, why didn't the court grant a motion dismissed without prejudice to grant a motion to amend? Well, again, the complaint was impending at that time. This took the place of the complaint. So it's like a complaint. It's in the pretrial order. But Mr. Sagan has dismissed everything except for what is in there. So there's no ability to amend. If you took the 52 language and merely excluded substantive due process and equal protection, wouldn't you have sufficient language there to get into a 1981? It's very ambiguous. I know it is, but you don't need to be very clear under our federal pleading. Well, when you look at the total complaint and you go back to the complaint, because that's where we negotiate it down. I mean, there's no suggestion that it needs to be in one thing. Well, counsel, are we talking—let me just back up a minute because Judge Wallace is a little ahead of me here. Are we talking about paragraph 5 of the settlement agreement? Yes. And it says, The parties agree that nothing in the agreement will prevent the plaintiff from continuing to pursue his claim against Dr. Tenorio in his official capacity for declaratory relief regarding the issue of whether he has the right to freely market his labor in the common occupations of life to any prospective employer without restriction and on equal terms as any citizen for so long as a period as he is lawfully exempt. Yes. And you are saying that that is not referring to—that refers to paragraph 52? That was lifted from paragraph 52. And that is not sufficient to state a 1981 claim when it couldn't even be amended to state a 1981 claim? Well, if he had just proceeded with his case, he may have been able to amend it. I mean, this was right before— I mean, this looks like a 1981. Well, we respectfully disagree. I mean, it doesn't track the language. It doesn't use the term white citizen. It doesn't use the word contract. It does say freely market labor. It's talking about market his labor on equal terms as any citizen. That's just—I thought that—to work just like citizens, I thought that's what 1981 was about. I thought that's what the civil rights statute said. Well, we disagree. I mean, you can only make so much of— But what would you put in there? I would—well, personally, I would have put in the statutory code. I would have tracked the language. I would have said it's right to contract. I would have listed the language. I would have said white citizens. You would have said Section 1981? Yes. But do our rules require that? They're not required. They don't. Right. Any type of wording that will alert the parties, why isn't—I'm having problems with this, too, and we want to help—we want to try and figure out what your position is. Why isn't that language sufficient to alert you to a 1981 action? Why did the district court just say it's not raised? Well, the district court also had an understanding of the settlement discussion. We agreed that the protection would be processed. Well— It was never—I agree the settlement doesn't say 1981 isn't. And that's the document that we're going to trial on. I understand. Okay. You've helped us out a lot. I know it's a very difficult question and you can't— It's always what happens, you know. You never know what's going to go on the trial court until you get into the court of appeals. I understand that. Thank you for your time. Well, I'd like to turn to the equal protection challenge. The problem with Mr. Sigata's position—well, first, Mr. Sigata completely ignores the covenant that you referred to previously. And the covenant is the most important document. The covenant is what separates the CNMI from the federal government. That's the personality. The second thing is the Non-Resident Workers Act is an immigration law. The third point is under equal protection analysis, the CNMI, because it has immigration power, should be treated similar to the federal government. And then fourth, using the appropriate analysis, the Non-Resident Workers Act— Now, is there any case that holds that, or are you asking us to write the first one that holds that? Because of the covenant reserving immigration to the CNMI, the CNMI stands in the shoes of the sovereign nation with respect to aliens coming in. Therefore, this language of Section 1981, all persons within the jurisdiction of the United States, means except those within the special jurisdiction of the CNMI. Is that what you want us to write? Not so broad on the last one. For 1981, 1981 generally does apply to CNMI. This Court has previously held that. We don't challenge that. But it's in the immigration context when it infringes on the CNMI's ability to enact immigration laws. Only in that context does the covenant prevent the application of 1981. But generally, in other contexts, there is no— Making contracts about buying and selling a car or entering into a short-term lease agreement, those contracts are all covered under 1981, because they're not excluded by the immigration clause from the covenant. In other words, you can't discriminate in a rental agreement because of somebody's national origin or something. But you can discriminate in labor contracts because of their national origin, because of the covenant. Is that what you're saying? Yes, that's exactly what I'm saying. And the covenant puts the CNMI— Well, what is the authority for that? The district court never looked at that. He never got there. He never got there. Isn't that the problem? Doesn't the district court have to look at that and decide whether or not it agrees with you? The district court never looked at that with respect to 1981. The district court did look at that with respect to the immigration challenge and the due process challenge. And what the district court found, if I remember properly, was that the CNMI, because it had the immigration powers, went to the federal law. It's the only immigration authority in the CNMI. Federal laws don't apply to the CNMI. So the review the district court had in Equal Protection was rational basis and conclude the way it did. Yes, sir. And the other side says, wait a minute, no, it should be strict scrutiny. In this statute, there are some parts of the statute that seem to be very clearly involved with the immigration and naturalization process. And I can follow the reasoning of the district court there. But aren't there some parts of the statute which aren't really connected to immigration and naturalization? If you'd like to point out a subsection, but I believe each one is related to some immigration purpose. Some of it. The immigration, the power of the Congress for immigration, according to Tyler's footnote 19, is foreign policy and immigration and naturalization. Clearly, you don't have any foreign policy here that's specifically ruled out, but do have half of that. So there must be some areas where even if you tied it into immigration and naturalization, you set a foreign policy decision, that's going to be ruled out because it isn't included in the covenant. So what do we do? Your position is every part of the statute actually deals with immigration and naturalization. And yet one of them here deals with people from Rhoda and Tinian and how many jobs they can have here. I mean, there are parts of it which seems to me are very hard to square with immigration and naturalization. Assume for the sake of argument there are such. The district court apparently would say, but the majority of it is immigration and naturalization. Therefore, then I'm going to use the reduced scrutiny. But isn't it equally feasible that you could parse out the parts of the statute which do not directly apply to immigration and naturalization and there use a higher scrutiny? Is it necessary? My question is, and I don't know how I come out of this, but my question is, is it all one way or the other? Is it like being pregnant or not being pregnant? Or can you parse out a statute and say part of it is clearly a rational basis, but part of it is clearly a strict scrutiny? With respect to the Non-Resident Work Act, the Non-Resident Work Act is set up to deal with the terms under which aliens can work in Seattle. That's the same as the U.S. immigration laws. And the federal courts, including this court, have done repeatedly, is looking at what is an immigration law and have used it very broadly and have included such things as welfare benefits, Medicare benefits, approval standards, the allocation of any resource. Basically, when the federal government deals with aliens, that's almost deemed de facto an immigration law. Well, you know, we've had a lot of cases about the plenary power over aliens, but have we ever gone so far as to say that it's all right to restrict, that it's all right for the government to say, if you admit aliens from, that any aliens who are admitted from a certain place cannot work for more than $3 a month? Have we ever, have the courts ever held restrictions that dictate the amount of pay that people can be paid? Not that I'm aware of, but the Non-Resident Work Act doesn't do that. No, I understand that. Not in so many ways. Not at all, I would say. Well, what is it, what does it do? The Non-Resident Work Act, I mean, one of the most important things is it establishes a local preference, the same as U.S. immigration laws. If somebody here is capable of doing the job, it doesn't go to somebody else. Well, they have to be willing to do the job. Willing and able. It's not just capable, because you've got 40,000 people here that are not willing to do the job for the wages that you're going to pay. Yes, that's correct. And so, for instance, in order, if I wanted to hire an alien to work here, what I would have to do is go to the Department of Labor and tell them that. And they would tell me, and I would have to fill out a job vacancy, and that's what I wanted somebody to do for me. And then I would have to post that in 15 days, and allow whoever wants to come from the local area to receive it. Do you have to post how much you're going to pay? Yes. All the terms? All the terms of employment, so that U.S. citizens in the CNI can apply. They're given the first grant. Nobody ever has, but they can. Right. And then whoever applies, I have to interview them, and then I have to explain to the Department of Labor why they weren't qualified. And it's the same, the district board compared it to the H-2B visa program that the United States has for temporary workers. And they're the same type of requirements. And what those requirements do is they ensure that before we bring somebody into the compound facility, we use the, fully use the local workers, so it doesn't create a problem for us. Okay. Are there any further questions? One in particular. All right, thank you. Thank you. Thank you. Very briefly. Yes, I'd like to respond to a couple of points pointed out by Governor Cousins. First of all, the Non-Resident Workers Act does limit the amount of pay, in the sense that you're limited, the alien is limited to, you know, strictly might be prohibited from having a pay raise, salary increase due in terms of his contract, unless he has approval from labor. The other point is that I'd like to leave the court with the impression that what I think is the true situation here is that we have here in the Commonwealth right now a situation that was perhaps not contemplated by the negotiators of the government when they did, and that's because now we have what we call, and we refer to it, I'm brief, as a minoritarian majority. We have more invited guests here than we have hosts, and no one ever contemplated, I think, that we would find ourselves in that unique circumstance. No place can I point to, even in California, I don't think we ever, back in the 1800s, ever reached that stage where, that in fact the hosts were outnumbered by the invited guests. Well, in the Imperial Valley, I think the invited guests probably outnumbered the landowners. So with that, I'd like to close, and I wish you well here in Sacramento. Thank you, counsel. The case just argued is submitted for decision. That concludes the court's calendar for this morning. The court thanks counsel for their presentations and wishes to express its gratitude to the Supreme Court of the Commonwealth and the Northern Mariana Islands for bringing us to this court room this morning. Thank you. The court stands adjourned. Hear, ye, hear, ye. All persons having had business with the Honorable United States Court of Appeals for the Ninth Circuit, Ruth Ellaby Clark, for the fourth of these sessions, now stands adjourned.
judges: Schroeder, Wallace Goodwin